**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff; and | § | |
| | § | |
| STATE OF TEXAS, | § | |
| Plaintiff-Intervenor, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-3795 |
| | § | |
| HALLIBURTON ENERGY SERVICES, | § | |
| INC., *et al.*, | § | |
| Defendants. | § | |
| | § | |

## <u>MEMORANDUM AND ORDER</u>

Pending before the Court is Defendant Precision Energy Services, Inc.'s ("Precision") Motion to Dismiss the Complaint of the United States of America [Doc. # 31] with a Memorandum in Support [Doc. # 33]. Plaintiff United States of America ("United States") has responded [Doc. # 68] and Precision has replied [Doc. # 74]. Upon review of the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that Precision's Motion to Dismiss is **denied**.

Also pending is Precision's Motion to Dismiss the Complaint in Intervention of the State of Texas [Doc. # 34] with a Memorandum in Support [Doc. # 36]. Plaintiff-Intervenor State of Texas ("Texas") has responded [Doc. # 69] and Precision

has replied [Doc. # 75].  Having reviewed the parties's submissions, all pertinent matters of record, and applicable law, the Court concludes that Precision's Motion to Dismiss is **denied**.

## I.   <u>BACKGROUND</u>

Beginning in 1971, The GNI Group, Inc. ("GNI"), owned and operated a facility in Webster, Texas, that manufactured, stored, reworked, and/or repaired items containing radioactive materials for customers, including Defendants.[1]  In the course of operations, radioactive material would sometimes be transferred to sites in Odessa, Texas, and Houston, Texas, for processing and/or storage.[2]  It was later discovered that the Webster, Odessa, and Houston sites (collectively the "Gulf Nuclear Sites"), including the buildings, equipment, soil, and septic systems, were contaminated with radioactive materials.

In 2001 and 2002, the Environmental Protection Agency ("EPA") commenced removal actions at each of the three sites, with the assistance of the State of Texas.  These actions have allegedly cost the EPA in excess of $29.3 million as of May 31, 2007.  The EPA claims that it has been able to recover only a fraction of the costs

[1]      Defendants include Halliburton Energy Services, Inc.; GE Healthcare Bio-Sciences Corporation; GE Healthcare, Inc.; GE Healthcare Holdings, Inc.; QSA Global, Inc.; Pengo Industries, Inc.; Precision Energy Services, Inc.; DII Industries, Inc.; and NL Industries, Inc.

[2]      In 2000, GNI filed for bankruptcy and the Webster and Houston sites were sold by the Bankruptcy Trustee.

associated with the clean-up of these sites, including $1.984 million from the Texas Commission on Environmental Quality ("TCEQ"), an agency of the State.  TCEQ has recovered only $128,500 from the GNI Bankruptcy Estate.  Thus, the EPA claims it has incurred, as of July 21, 2007, more than $26.7 million in unreimbursed costs related to the Gulf Nuclear Sites; TCEQ claims losses in excess of $1.85 million in costs, as well as attorneys' fees, costs, and expenses related to the investigation and prosecution of this matter.

The United States filed suit against Defendants under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601 *et seq*., seeking recovery of response costs incurred thus far by the United States in conducting the removal actions at the Gulf Nuclear Sites and a declaration of its right to recover future response costs as the recovery efforts continue.  The United States alleges that each Defendant arranged for the disposal or treatment of hazardous substances at one or more of the Gulf Nuclear Sites and that, pursuant to federal law, each is jointly and severally liable to the United States for all relevant response costs.[3]  Texas subsequently intervened and brings identical claims

---

[3]     The United States sues all Defendants for recovery associated with the Webster site. Defendants Halliburton Energy Services, DII Industries, Inc., and NL Industries, Inc., are named as to the Odessa site.  Claims regarding the Houston site are alleged only against Halliburton Energy Services, Inc., and Amersham, which the United States claims is now known as GE Healthcare Bio-Sciences Corporation, GE Healthcare, Inc., or QSA Global, Inc.

under CERCLA and a claim for cost recovery under the Texas Solid Waste Disposal

Act ("TSWDA"), TEX. HEALTH & SAFETY CODE § 361.197.

## II.   <u>STANDARDS OF LAW</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure is viewed with disfavor and is rarely granted. *Manguno v. Prudential Prop.*

*& Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).  The complaint must be liberally

construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken

as true.  *Id.*  A claim is legally insufficient under Rule 12(b)(6) "only if there is no set

of facts that could be proven consistent with the allegations in the complaint that

would entitle the plaintiff to relief."  *Power Entm't, Inc. v. Nat'l Football League*

*Prop., Inc.*, 151 F.3d 247, 249 (5th Cir. 1998).  However, "a statement of facts that

merely creates a suspicion that the pleader might have a right of action" is insufficient

to overcome a motion to dismiss.  *Campbell v. City of San Antonio*, 43 F.3d 973, 975

(5th Cir. 1995) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE:

CIVIL 2D § 1216 at 156–59).

A cause of action can fail to state a "claim upon which relief can be granted"

if, *inter alia*, it fails to comply with the requirements of Rule 8(a)(2).  *See, e.g.*,

*Buerger v. Sw. Bell Tel. Co.*, 982 F. Supp. 1247, 1249–50 (E.D. Tex. 1997); *Bank of*

*Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, 201 F. App'x 988, *2

(5th Cir. Oct. 9, 2006) ("[A] Rule 12(b)(6) motion to dismiss for failure to state a claim may be a proper vehicle to challenge the sufficiency of a pleading under Rule 8."). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2). The United States Supreme Court has made clear, however, that a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964–65 (2007) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.  "Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests."  *Id.* at 1965 n.3 (internal quotations omitted). When the complaint contains inadequate factual allegations, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 1966.  "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual

controversy to proceed." *Id.* at 1967 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)).

## III.   <u>ANALYSIS</u>

Defendant Precision has moved to dismiss the claims raised against it, arguing that the United States and Texas (collectively, "Plaintiffs") have failed to allege sufficient facts to satisfy Rule 8(a)'s pleading requirements.  Precision asserts that Plaintiffs have failed to allege facts demonstrating that Precision is a "covered person" under CERCLA and the TSWDA, have merely recited the language of those statutes without offering any factual support, and have failed to distinguish the wrongs allegedly committed by each Defendant in this action.

To establish liability under CERCLA, the United States must establish, *inter alia*, that the defendant falls within at least one of four categories of responsible parties.  *See Tanglewood E. Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).  Responsible parties include:

(1)   the owner and operator of a vessel or a facility,

(2)   any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3)   any person who by contract, agreement, or otherwise arranged for disposal or treatment . . . of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party

or entity and containing such hazardous substances, and

(4)     any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person . . . .

42 U.S.C. § 9607(a).

In this case, Plaintiffs have alleged that Precision, either directly or as a successor in interest to Pengo Industries, Inc., Radiation Engineering & Manufacturing Co., S.I.E., Inc., Computalog Research, Inc., Penwood, Inc., Computalog Wireline Services, Inc., the Wood Group (USA), and Computalog U.S.A., Inc., "by contract, agreement, or otherwise arranged for disposal or treatment of hazardous substances owned or possessed by [Precision or the person(s) to whose liabilities at the Webster site Precision succeeded] . . . ."[4]  *See Vine St., LLC v. Keeling*, 460 F. Supp. 2d 728, 740 (E.D. Tex. 2006) ("Courts unanimously recognize corporate successor liability under CERCLA.").  Thus, Plaintiffs allege that Precision is liable as an "arranger," as contemplated by subsection 42 U.S.C. § 9607(a)(3).

Arranger liability is broad and requires a "case-by-case analysis [that] consider[s] a number of factors, no one of which is dispositive." *Celanese Corp. v. Coastal Water Auth.*, 475 F. Supp. 2d 623, 635 (S.D. Tex. 2007) (citing *Sea Lion, Inc.*

---

[4]     *See* Complaint [Doc. # 1], ¶¶ 14, 17, 107; Complaint in Intervention [Doc. # 7], ¶¶ 14, 17, 105, 132–33 (using similar language to allege a claim under the TSWDA).  Plaintiffs also allege that "[i]n 1983, Pengo sent [radioactive material] to GNI for repair and/or for the disposal of contaminated parts."  *See id.* ¶ 40.

*v. Wall Chem. Corp.*, 974 F. Supp. 589, 595 (S.D. Tex. 1996)); *see also Geraghty & Miller, Inc. v. Conoco Inc.*, 234 F.3d 917, 929 (5th Cir. 2000) ("'Arranger' is another CERCLA term that is to be given a liberal interpretation."). Therefore, whether Precision may be deemed an "arranger" is something that the Court can, and should, determine once the parties are in a position to offer relevant evidence bearing on this question. *See Celanese Corp.*, 475 F. Supp. 2d at 635 ("Examples of . . . factors [bearing on whether a defendant is an 'arranger' under CERCLA] include whether the alleged arranger had some actual involvement in the decision to dispose of the waste, or had an obligation to dispose of the waste, engaged in a transaction for the purposes of waste disposal, owned or possessed the waste, or controlled the disposal of waste regardless of whether it owned or possessed it."). At this early stage in these proceedings, the Court is satisfied that Plaintiffs have adequately alleged that Precision is a "covered person" under CERCLA and the TSWDA. *See, e.g.*, *Celanese Corp.*, 475 F. Supp. 2d at 636; *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (A district court weighing a motion to dismiss is not to focus on "whether a plaintiff will ultimately prevail but [on] whether the claimant is entitled to offer evidence to support the claim.").

Precision next contends that Plaintiffs' allegations are conclusory. It further asserts that Plaintiffs must plead additional facts demonstrating that Precision is, in

fact, a corporate successor to the listed companies.  However, the Court deems nothing inherently "conclusory" about Plaintiffs' assertions.  Rather than merely reciting the language of CERCLA and the TSWDA and stating that Precision is liable, Plaintiffs have offered specific factual support concerning the time—1971 to 1992—place—the Webster site—and conduct—storage, reworking, and repair of items containing radioactive materials—at issue. Further, in bringing claims against Precision as a corporate successor, Plaintiffs have provided information regarding states of incorporation and business aliases, which is sufficient to provide Precision notice of the successorship alleged.[5]

Similarly, the Court is unpersuaded by Precision's contention that Plaintiffs have impermissibly raised only generalized allegations against "Defendants" without specifying "how Precision, or any of the eleven entities allegedly related to it, is connected to any disposal activities at the sites or to each other."[6]  To the contrary, rather than stating that "Defendants" have engaged in conduct that cannot reasonably

---

[5]     The Court also notes the United States' claim that in the course of investigating this matter prior to bringing suit, Precision provided information concerning hazardous material shipments to the Webster site, as well as the names and sequence of corporate predecessors to Precision.  *See* Complaint [Doc. # 1], at 10 n.4, 13 n.6.  Although this evidence is not properly before the Court on Precision's motion to dismiss, it raises a question as to how Precision can assert it has difficulty identifying from the pleadings the allegations against it.

[6]     *See* Memorandum in Support of Precision's Motion to Dismiss the Complaint of the United States [Doc. # 33], at 6.

be attributed to all named defendants, Plaintiffs have stated that *each* of the named

defendants engaged in similar conduct.  Specifically, Plaintiffs have alleged that each

Defendant "sent radioactive materials . . . to the Webster site for repair, storage, and/or

disposal."[7]  In addition, Plaintiffs have alleged that Precision, as opposed to other

Defendants, is only alleged to have contributed to the contamination of the Webster

site.

Precision has not pointed to any authority requiring a heightened degree of fact

pleading in CERCLA or TSWDA cases, and the Court has not uncovered any such

authority.[8]  Plaintiffs have sufficiently alleged claims against Precision, directly and

as a corporate successor, under CERCLA and TSWDA for conduct associated with

the Webster site.  *See Twombly*, 127 S. Ct. at 1969 n.8 (citing *Leimer v. State Mut.*

*Life Assurance Co.*, 108 F.2d 302, 305 (8th Cir. 1940)) ("'[I]f, in view of what is

alleged, it can reasonably be conceived that the plaintiffs . . . could, upon a trial,

establish a case which would entitle them to . . . relief, the motion to dismiss should

---

[7]    *See* Complaint [Doc. # 1], ¶ 37; Complaint in Intervention [Doc. # 7], ¶¶ 37, 133 ("Each Defendant . . . arranged to process, store, or dispose of solid waste at [a Gulf Nuclear Site] . . . and is thus a 'person responsible for solid waste' within the meaning of [the TSWDA].").

[8]    Many of the cases Precision cites in support of dismissal concern pleading standards under Federal Rule of Civil Procedure 9, which imposes heightened pleading requirements for claims of fraud or mistake.  *See Bradley v. Phillips Petroleum Co.*, No. H-05-3912, 2007 U.S. Dist. LEXIS 92866 (S.D. Tex. Dec. 18, 2007); *Dell, Inc. v. This Old Store, Inc.*, No. H-07-0561, 2007 U.S. Dist. LEXIS 47818 (S.D. Tex July 2, 2007).  Accordingly, application of these cases to the issue presented here is limited at best.

not have been granted.'").

IV.     **CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Precision Energy Services, Inc.'s Motion to Dismiss the

Complaint of the United States of America [Doc. # 31] is **denied**.  It is further

**ORDERED** that Precision Energy Services, Inc.'s Motion to Dismiss the

Complaint in Intervention of the State of Texas [Doc. # 34] is **denied**. It is further

**ORDERED** that Precision Energy Services, Inc. is to file an answer to the

Complaint and Complaint in Intervention within **twenty days** of the date of this

Memorandum and Order.

SIGNED at Houston, Texas, this 5th day of **March, 2008**.

_____

Nancy F. Atlas

United States District Judge